UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BANCORP SERVICES, L.L.C., )<br>)<br>Defendant. ) | No. 4:00 CV 01927 (CEJ) |

**MEMORANDUM OF LAW IN SUPPORT OF METLIFE'S MOTION FOR SUMMARY JUDGMENT DISMISSING BANCORP'S CLAIM OF INFRINGEMENT AND GRANTING METLIFE'S CLAIM FOR A DECLARATION OF NON-INFRINGEMENT**

Plaintiff Metropolitan Life Insurance Company ("MetLife") submits this Memorandum of Law, and the accompanying Declarations of Sebastian Janssen, Shelley Lang and Joseph P. Zammit, in support of its motion for summary judgment (1) dismissing the counterclaim of Bancorp Services, L.L.C. ("Bancorp") against MetLife for patent infringement; and (2) granting MetLife's claim for a declaratory judgment of non-infringement.[1]

**Preliminary Statement**

This patent case is uniquely ripe for summary judgment. The Federal Circuit has already definitively construed one claim limitation that appears in every claim of the patent in suit. Since there can be no dispute that MetLife is not doing what the Federal Circuit's construction requires, MetLife cannot be infringing the patent. Accordingly, summary judgment is appropriate.

Summary judgment will serve the salutory purpose of obviating the need to engage in extensive and expensive discovery and attendant motion practice, to conduct a <u>Markman</u> hearing,

---

[1] Bancorp's Counterclaim is annexed as Zammit Decl. Exhibit 3, and MetLife's Reply to that Counterclaim is Zammit Decl. Exhibit 4. MetLife's claim for declaratory relief is the First Claim in its Second Amended Complaint filed April 2, 2002. (Zammit Decl. Exhibit 2).

and to address the issues of patent validity, enforceability and grounds for a finding of non-infringement other than that raised on this motion.

In addition to considerations of judicial economy, however, the prompt resolution of this case is critical to MetLife from a business point of view. Even though MetLife in fact does not infringe Bancorp's patent, the mere existence of Bancorp's infringement claim casts a cloud upon MetLife's ability to market separate account stable value life insurance to its existing and potential customers. (Janssen Decl. ¶¶ 8-10).

MetLife commenced its action for declaratory relief in January 2000 in order to get an adjudication of its rights *before* it actually had to begin administering any stable value policies. It sought a declaration that such administration would not infringe Bancorp's patent. In February 2002, this Court held that the patent in suit was invalid for indefiniteness in <u>Bancorp Services, L.L.C. v. Hartford Life Insurance Co</u>., No. 4:00-CV-70 (the "<u>Hartford</u>" action). Thereafter, the Court granted Bancorp's motion to dismiss MetLife's claim for declaratory relief in this case and stayed further proceedings, reasoning that: "At the present time, there is a final judgment that the [patent in suit] is invalid. As stated above, there can be no infringement of an invalid patent. [Citation omitted.] As such, the mere fact that Bancorp is seeking appellate review of the invalidity ruling cannot give MetLife a reasonable apprehension of being sued for infringement." Memorandum and Order dated March 19, 2003, at 9-10.

After the patent was held invalid, MetLife in good faith commenced administering its first separate account stable value life insurance policy. Since then, MetLife has had several banks invest large sums in its separate account stable value life insurance, and currently has substantial prospects for further additional sales. On March 1, 2004, however, the Federal Circuit reversed this Court's determination of invalidity in the <u>Hartford</u> action. 359 F.3d 1367 (2004). In July 2004, Bancorp filed an action against MetLife, alleging that MetLife's system and method for

administering separate account stable value life insurance infringes its patent.[2]

The market for stable value life insurance represents billions of dollars in premiums. MetLife cannot effectively compete in that market when the continuation of this litigation raises the specter, however remote, that MetLife could some day be enjoined from continuing to administer the policies it has already sold and those it sells during the pendency of this lawsuit. As discussed below, MetLife is entitled to summary judgment, and respectfully submits that it is entitled to it now.

## Relevant Facts

The undisputed facts material to this motion are set forth in the annexed Statement of Material Facts Pursuant To Local Rule 7-4.01(E). While the material facts themselves are few and straightforward, a basic overview of their context will help to highlight their significance.

United States Patent No. 5,926,792 (the "'792 Patent," a copy of which is annexed as Exhibit 1 to the Zammit Declaration) describes a "[m]ethod and system to track, reconcile and administer the values of life insurance in separate accounts, including Stable Value Protected funds." ('792 Patent Abstract). Neither Bancorp, the assignee of the '792 Patent, nor the inventors, claims to have invented "Stable Value Protected Life Insurance" (Zammit Decl. Exhibit 6 at ¶¶ 18, 19); rather, they claim to have invented, and the patent is only concerned with, a system and method for administering such insurance. Id. Nevertheless, an understanding of the product is necessary to understand its administration.

## Separate Account Stable Value Protected Life Insurance

Banks and corporations purchase variable life insurance on the lives of their employees to help fund, on a tax advantaged basis, future post-retirement benefits for the group of insured

---

[2] By Order dated February 9, 2005, Bancorp's infringement action was consolidated with this action and, by Order dated February 24, 2005, Bancorp's complaint was directed to be filed as a counterclaim in this action.

-3-

employees.  Hartford, 359 F.3d at 1369.  When purchased by a corporation, such insurance is referred to as "COLI" ("Corporate Owned Life Insurance"), and when purchased by a bank as "BOLI" ("Bank Owned Life Insurance").  Id.

The type of COLI/BOLI that the '792 Patent is concerned with differs from other variable life insurance COLI/BOLI policies[3] in two respects: (1) it is a "separate account" policy, and (2) it includes a "stable value protected investment." The "separate account" aspect means that the assets purchased with the excess premium[4] are not held in the insurer's "general account," where they would be available to satisfy all of the insurer's general creditors in the event of the insurer's insolvency or bankruptcy, but rather in a segregated "separate account" where they are ear-marked to the particular policy for the sole benefit of the policyholder.  Zammit Decl. Exhibit 6 ¶¶ 5-8.

As the Federal Circuit observed in its decision in Hartford, separate account life insurance policies have existed since the 1970s.  359 F.3d at 1369.  However, the surrender value[5] of those policies (which is what BOLI and COLI plan owners must report under accounting rules) varied as the market value of the securities in the separate account fluctuated.  Id.  By use of a "stable value protected investment," however, banks and corporations are able to report a more predictable, stable value on their financial statements.  Id.

The Federal Circuit described a "stable value protected investment" as "provid[ing] a mechanism for stabilizing the reported value of life insurance policies by arranging for a third party guarantor, called the 'stable value protected writer,' to guarantee a particular value for the life

---

[3]  A "term life" policy is an insurance product that promises to pay a specified death benefit in exchange for a specified premium.  It has no investment component.  In contrast, a "variable life" policy permits the policyholder to pay the insurer amounts in excess of the premium needed to fund the minimum death benefit, and the excess payments are invested in a variety of financial assets.  Provided that certain restrictions are met, the corresponding investment return to the policyholder will be tax-free.  See Zammit Decl. Exhibit 6 at ¶ 4; Hartford, 359 F.3d at 1369.

[4]  That is, the portion of the premium in excess of that needed to fund the minimum death benefit.

insurance policy, regardless of its market value, should the policy have to be paid out prematurely. To offset the risk to a potential guarantor for providing that service, the guarantor is paid a fee and restrictions are placed on the policyholder's right to cash in the policy." 359 F.3d at 1369. As Bancorp itself stated to the Federal Circuit, the guarantor "would guarantee to make up the difference between market and book value if the market value of securities of the separate account was less than the 'book value' upon surrender of the policy." Opening Brief of Plaintiff-Cross Appellant Bancorp Services, L.L.C. at 4 (Zammit Decl. Exhibit 5).

### Administration of Stable Value Policies

As is evident from the foregoing, the administration of a COLI/BOLI policy with a stable value protected investment requires that, in addition to keeping track of the market value of the separate account assets (as is necessary with any separate account variable life policy), it also track the book value. On day one, market value and book value are equal. Thereafter, book value is determined by accreting interest at a specified rate of return (referred to in the Patent as the "targeted return"), which may be reset periodically, e.g., quarterly. See '792 Patent Col. 3 line 20-29. The book value grows smoothly by steadily crediting interest at the targeted rate of return. The market value, on the other hand, grows, or diminishes, in accordance with the changes in the market value of the underlying assets.

If the insurance policy is "surrendered" (i.e., cashed in) at a time when the book value is greater than the market value, then the guarantor (referred to in the '792 Patent as the "SVP Writer," e.g., Col. 12, line 45; see Hartford, 359 F.3d at 1373-74) is responsible for covering the shortfall. Put another way, the SVP Writer is "at risk" for the difference between the smoothed book value and the fluctuating market value because it must cover the shortfall upon surrender.

---

[5] The Federal Circuit in Hartford noted that "surrender value" means "the value of all of the components of a life insurance policy minus any surrender charges and/or outstanding debt." 359 F.3d at 1372.

It is this "difference between the actual [i.e., market] and the 'protected' [i.e., book] value of the investment" which is referred to in the '792 Patent as the "surrender value protected investment credits." Hartford, 359 F.3d at 1374. The '792 Patent requires that any infringing system or method for administering a life insurance policy calculate such surrender value protected investment credits. '792 Patent at Cols. 15-20. MetLife's system and method for administering stable value COLI/BOLI, however, does not calculate such credits. (Lang Decl. ¶ 3; Janssen Decl. ¶¶ 5-7). Accordingly, MetLife cannot be found to infringe the '792 Patent.

## Argument

### I. SUMMARY JUDGMENT IS APPROPRIATELY GRANTED WHERE, AS HERE, THERE ARE NO DISPUTED ISSUES OF MATERIAL FACT AND THE MOVANT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW

#### A. Summary Judgment Is Appropriate in Patent Cases

If there are no genuine issues of material fact, summary judgment is as appropriate in a patent infringement case as in any other. See, e.g., Continental Can Co. USA v. Monsanto Co., 948 F.2d 1264, 1265 (Fed. Cir. 1991); Chore-Time Equip., Inc. v. Cumberland Corp., 713 F.2d 774, 778-79 (Fed. Cir. 1983); Amgen, Inc. v. Hoechst Marion Roussel, Inc., 3 F. Supp. 2d 104, 107 (D. Mass. 1998).

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Johnston v. IVAC Corp., 885 F.2d 1574, 1576-77 (Fed. Cir. 1989). It follows that summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether there is a genuine issue of material fact, the evidence must be viewed in the light most favorable to the party opposing the motion, with doubts resolved in favor of the nonmovant. Transmatic, Inc. v. Gulton Indus., Inc., 53 F.3d 1270, 1274 (Fed. Cir. 1995). In this case, Bancorp bears the burden of proof on the issue

of whether MetLife infringes the '792 Patent because "it is axiomatic that the patentee bears the burden of proving infringement." Ultra-Tex Surfaces, Inc. v. Hill Bros. Chemical Co., 204 F.3d 1360, 1364 (Fed. Cir. 2000) (holding that the patentee could not complain that the accused infringer did not introduce sufficient evidence as to the alleged infringing product, because it was the patentee's burden to do so). A non-moving party who bears the burden of proof at trial for an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "To avoid summary judgment [the patentee] was required to proffer evidence that [the accused infringer's product] contained every claim element either exactly or by a substantial equivalent." S. Bravo Systems, Inc. v. Containment Technologies Corp., 96 F.3d 1372, 1376 (Fed. Cir. 1996) (patentee's unsupported assertions of infringement were insufficient to avoid summary judgment). Such an issue of fact is a genuine issue only if it reasonably can be resolved in favor of either party. See Anderson, 477 U.S. at 250-51. Mere disagreement about the facts, or the bald assertion that a genuine issue of material fact exists, cannot preclude the granting of summary judgment. See Palesch v. Missouri Commission, 233 F.3d 560, 565-66 (8th Cir. 2000); Harper v. Wallingford, 877 F.2d 728, 731 (9th Cir. 1989); California Architectural Building Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987), cert. denied, 484 U.S. 1006 (1988). "There must be sufficient substance, other than attorney argument, to show that the [infringement] issue requires trial." Glaverbel Societe Anonyme v. Northlake Marketing & Supply, Inc., 45 F.3d 1550, 1562 (Fed. Cir. 1995). Thus, "on [a] motion for partial summary judgment [of non-infringement], [the accused infringer] need only point out the absence of evidence supporting a finding of infringement . . . . To resist this motion, [the patentee] must then come forward with specific evidence showing that there is a genuine issue of material fact for trial as to whether the . . . patent is infringed." Larami Corp. v. Amron, 27

U.S.P.Q.2d 1280, 1282 (E.D.Pa. 1993), aff'd, 91 F.3d 166 (Fed Cir. 1996). "[A] nonmoving party may not successfully oppose a summary judgment motion by simply replacing 'conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.'" Id., quoting Lujan v. Nat'l Wildlife Federation, 110 S. Ct. 3177, 3188 (1990). Rather "[t]o avoid summary judgment, the non-movant must make a sufficient showing on every essential element of its claim on which it bears the burden of proof." P.H. v. School Dist. of Kansas City, 265 F.3d 653, 658 (8th Cir. 2001).

### B. The Issue Is Ripe For Decision

The Federal Circuit's decision in Hartford provides the definitive construction of the phrase "surrender value protected investment credits," which every claim of the '792 Patent requires to be calculated, and that construction is binding on Bancorp as a matter of collateral estoppel. MetLife's computer system, the "Vantage System," is not programmed to calculate surrender value protected investment credits and, thus, it cannot infringe the '792 Patent's "system"[6] or "computer readable media"[7] claims. (Lang Decl. ¶ 3). Moreover, in administering its stable value COLI/BOLI policies, MetLife does not calculate that value outside the Vantage System, has never calculated that value, and in all likelihood will never calculate that value during the life of the '792 Patent, if ever, so it cannot infringe the "method" claims of the patents.[8] (Janssen Decl. ¶¶ 5-7). MetLife, therefore, has not infringed and does not threaten to infringe any of the claims of the '792 Patent.

The facts on which this motion turns are both straightforward and completely cut and dry. Either MetLife calculates surrender value protected investment credits or it does not. If it does not,

---

[6] That is, Claims 1 to 8 and 19-27.

[7] That is, Claim 18.

[8] That is, Claims 9-17 and 28-37.

it cannot be infringing Bancorp's patent.  MetLife has provided system documentation for the Vantage System in discovery and, on this motion, has provided competent sworn testimony that it does not calculate such credits.  Bancorp cannot defeat this motion by arguing that it needs to conduct discovery in order to determine whether or not MetLife computes surrender value protected investment credits.  Federal Circuit precedent makes it abundantly clear that that is not a viable response to this motion.

The Federal Circuit has held that, in order to comply with Fed. R. Civ. P. 11, counsel for a patentee must conduct an infringement analysis *before* filing suit:

> Rule 11, we think, must be interpreted to require the law firm to, at a bare minimum, apply the claims of each and every patent that is being brought into the lawsuit to an accused device and conclude that there is a reasonable basis for a finding of infringement of at least one claim of each patent so asserted.  The presence of an infringement analysis plays the key role in determining the reasonableness of the pre-filing inquiry made in a patent infringement case under Rule 11.

View Engineering, Inc. v. Robotic Vision Systems, Inc., 208 F.3d 981, 986 (Fed. Cir. 2000). "In bringing a claim of infringement, the patent holder, if challenged, must be prepared to demonstrate to both the court and the alleged infringer exactly why it believed before filing the claim that it had a reasonable chance of proving infringement. Failure to do so should ordinarily result in the district court expressing its broad discretion in favor of Rule 11 sanctions . . . ." Id. This pre-filing infringement analysis consists of two components:  an independent interpretation of the claims and a comparison of the accused system with the construed patent claims. Antonious v. Spalding & Evenflo Cos., Inc., 275 F.3d 1066, 1072-74 (Fed. Cir. 2002).

Here, the Federal Circuit had already provided the construction for the relevant claim limitation.  Rule 11, as interpreted by the Federal Circuit, required that Bancorp's counsel have "some actual evidence uncovered during the prefiling investigation, that each claim limitation reads on the accused device either literally or under the doctrine of equivalents." Antonius, 275 F.3d at 1074.

Hence, in opposing this motion Bancorp is obligated to come forward with the evidence of infringement it uncovered during its counsel's mandatory pre-filing investigation. Bancorp may not simply appeal to the Court to defer its response to MetLife's motion because it "has not yet had an opportunity to conduct discovery." To do so would be tantamount to an admission that it violated Rule 11.

## II. METLIFE IS ENTITLED TO DISMISSAL OF BANCORP'S COUNTERCLAIM AND A DECLARATION THAT IT DOES NOT INFRINGE BANCORP'S PATENT

A United States patent is infringed when someone without authority makes, uses, sells or offers to sell within the United States, or imports into the United States, the patented invention during the term of the patent. 35 U.S.C. § 271(a). The scope of protection granted by a United States patent is defined by the claims of the patent as read literally or under the Doctrine of Equivalents.

The determination of patent infringement is a two step process. First, the meaning of the patent claim is ascertained. Second, the structure or process under consideration is compared with the claim as properly interpreted. Becton Dickinson & Co. v. C.R. Bard, Inc., 922 F. 2d 792, 796 (Fed. Cir. 1990). See also CVI/Beta Ventures, Inc. v. Tura LP, 112 F.3d 1146, 1152 (Fed. Cir. 1997), cert. denied, 552 U.S. 1109 (1998); Kahn v. Gen. Motors Corp., 135 F.3d 1472, 1476 (Fed. Cir. 1998); Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995 (en banc), aff'd, 517 U.S. 370 (1996). In this case, there can be no material dispute as to either aspect of this analysis, as discussed below.

This motion focuses on a single limitation contained in every claim of the '792 Patent. Every claim of the patent (whether system, method or computer readable media claim) includes a means for or step of:

> ***calculating surrender value protected investment credits*** for the life insurance policy. [Emphasis added].

-10-

See '792 Patent (Zammit Decl. Exhibit 1) Claim 1 (Col. 15 line 44); Claim 9 (Col. 16 line 61); Claim 18 (Col. 18 line 3); Claim 19 (Col. 18 line 20); Claim 28 (Col. 19 line 14).[9]

### A.   The Federal Circuit Has Definitively Construed The Relevant Claim Limitation

In Hartford, the Federal Circuit clearly stated that: "The ['792] patent provides a computerized means for tracking the book value and market value of the policies *and calculating the credits representing the amount the stable value protected writer must guarantee and pay should the policy be paid out prematurely.*" 359 F.3d at 1369 (emphasis added).

The construction of a patent's claims is an issue of law to be decided by a court. Markman, 52 F. 3d at 970-71. Because it is an issue of law, the claim construction can be performed *de novo* by the Federal Circuit. S3 Inc. v. NVIDIA Corp., 259 F.3d 1364, 1367 (Fed. Cir. 2001); Atmel Corp. v. Info. Storage Devices, Inc., 198 F.3d 1374, 1378 (Fed. Cir. 1999); Cybor Corp. v. FAS Technologies, 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc).  Here, the Federal Circuit in Hartford has already construed the relevant claim term in the '792 Patent.  That construction is now binding on Bancorp. Phonometrics, Inc. v. Westin Hotel Co., 319 F.3d 1328, 1332-33 (Fed. Cir. 2003) (sanctioning patentee for frivolous attempt to re-litigate claim construction that had been previously determined by Federal Circuit in cases brought against other defendants), cert. denied, 539 U.S. 960 (2003); TM Patents L.P. v. IBM Corp., 72 F.Supp. 2d 370 (S.D.N.Y. 1999) (patentee is collaterally estopped from relitigating claim construction in subsequent proceeding).

The Federal Circuit held in Hartford that the claim term "surrender value protected investment credits" is clear and not indefinite.  It noted that the components of the term have well-

---

[9] These are the "independent" claims of the patent.  All of the other claims in the '792 Patent are "dependent" claims, meaning that they specifically incorporate each of the limitations of one of the "independent" claims cited in the text – including the limitation as to surrender value protected investment credits quoted in the text – and then add additional limitations.  "By definition, if the claim to which the dependent claim refers is not infringed, the dependant claim cannot be infringed, as a matter of law." Eltech Systems Corp. v. PPG Industries, Inc., 710 F. Supp. 622, 634 n.10 (W.D. La. 1988), aff'd, 903 F.2d 805 (Fed. Cir. 1990). See generally 3 Chisholm on Patents §8.06[5][6](2004).

recognized meanings. "Surrender value" means "the value of all of the components of a life insurance policy minus any surrender charges and/or outstanding debt." 359 F.3d at 1372. "Protected investment" "refers to the underlying investment components of an insurance policy or policies whose return is stabilized over time in return for a fee." 359 F.3d at 1372. And, most importantly for purposes of this motion, "credit" means "the difference between the actual value of an investment and the smoothed out or targeted return value [i.e., the book value] of that investment." 359 F.3d at 1372.

Putting all the components of the claim term together, the Federal Circuit definitively construed the term as follows: "The term 'surrender value protected investment credits' . . . refers to the credits necessary to make up any shortfall between the actual value of a particular investment at a particular time and the amount the SVP writer had promised to pay on that investment if the policy were surrendered at any particular time." 359 F.3d at 1374. The Federal Circuit noted that, by choosing to use the phrase "surrender value protected investment credits," the patent draftsman probably "intended to emphasize the need to make up the difference between the actual and the 'protected' value [i.e., book value] of the investment as of the time of the policy's surrender." 359 F.3d at 1374.

Because MetLife does not calculate the difference between book and market value – that is, the amount the SVP Writer is at risk for – it cannot infringe the '792 Patent.

### B. MetLife Does Not Calculate Surrender Value Protected Investment Credits And, Therefore, Does Not Infringe The '792 Patent

MetLife does not calculate "surrender value protected investment credits" as such term has been construed by the Federal Circuit. (Lang Decl. ¶ 3; Janssen Decl. ¶¶ 5-7).

#### 1. MetLife Does Not Literally Infringe The '792 Patent

In order to literally infringe the '792 Patent, MetLife's system or method must satisfy every limitation set forth in a claim of the patent. E.g., Cole v. Kimberly-Clark Corp., 102 F.3d 524, 532

-12-

(Fed. Cir. 1996), cert. denied, 522 U.S. 812 (1997). "[A]ny deviation from the claim preclud[es] a finding of infringement." Lantech, Inc. v. Keip Mach. Co., 32 F.3d 542, 547 (Fed. Cir. 1994). Every claim of the '792 Patent requires that there be a calculation of "surrender value protected investment credits." Because MetLife's system and method of administration do not calculate such surrender value protected investment credits, MetLife cannot literally infringe the '792 Patent.

### 2. MetLife Does Not Infringe the '792 Patent Under the Doctrine of Equivalents

Claims that are not literally infringed may nevertheless be infringed under the Doctrine of Equivalents, if "the accused product or process contain[s] elements . . . equivalent to each claimed element of the patented invention." Warner-Jenkinson Co., Inv. v. Hilton Davis Chem. Co., 520 U.S. 17, 40 (1997). The doctrine must be applied to the individual elements of the patent claim, not to the invention as a whole. Id. at 29. "Therefore, a showing of overall equivalency of the patented product to the accused product will not be sufficient to prove infringement." Wyttenbach v. Atoma Intern., Inc., 997 F. Supp. 1037, 1050 (N.D. Ill. 1998), aff'd, 185 F.3d 881 (Fed. Cir. 1999). The "All Limitations Rule," which requires that *every* limitation of a claim be satisfied by an infringing system or method, is also applicable to infringement under the Doctrine of Equivalents. Athletic Alternatives, Inc. v. Prince Manufacturing, Inc., 73 F.3d 1573, 1582 (Fed. Cir. 1996). No claim limitation may be ignored as superfluous or immaterial for any reason. All elements of a claim are made material by the patentee's choice to include them in the claim. Water Meter Co. v. Desper, 101 U.S. 332, 377 (1880). Accord, Becton Dickinson, supra, 922 F.2d at 798. "There can be no infringement as a matter of law if a claim limitation is totally missing from the accused device." London v. Carson Pirie Scott & Co., 946 F.2d 1534, 1539 (Fed. Cir. 1991) (affirming summary judgment of no infringement under the Doctrine of Equivalents). An analysis under the Doctrine of Equivalents focuses upon whether the accused infringer performs substantially the same function, in substantially the same way, to produce substantially the same

-13-

result as the claimed element of the patented invention. Warner-Jenkinson, supra, 520 U.S. at 35-36; see also Graver Tank and Manufacturing Co. v. Linde Air Products Co., 339 U.S. 605, 610 (1950); Conair Group, Inc. v. Automatik Apparate-Maschinenbau GmbH, 944 F.2d 862, 866 (Fed. Cir. 1991).

Thus, in order to conclude that MetLife's system or method of administration infringes the '792 Patent under the Doctrine of Equivalents, it would be necessary to find that MetLife performs the "equivalent" of calculating the difference between the book value and market value associated with a stable value COLI/BOLI policy. MetLife does nothing that could even arguably be deemed equivalent.

The difference between book value and market value represents the amount for which the SVP Write is "at risk," meaning the amount that it would have to pay if the insurance policy were to be surrendered prematurely. See the discussion, supra, at pp. 5-6. While calculating that difference periodically may be a desirable feature of the '792 Patent, MetLife in fact does not calculate that difference between book value and market value, and does nothing to quantify the amount for which the SVP Writer is at risk. Lang Dec. ¶ 3; Janssen Decl. ¶¶ 5-7. Because that value is simply never calculated, it is impossible to say that MetLife somehow achieves "substantially the same result in substantially the same way" – on the contrary, it never achieves that result at all. Thus, there can be no infringement under the doctrine of equivalents. See, e.g., Phonometrics, Inc. v. Northern Telecom, Inc., 133 F.3d 1459, 1467 (Fed. Cir. 1998) ("we conclude that there can be no equivalent infringement, for one of the functions claimed in the . . . patent is completely absent from the accused devices"); Becton Dickinson, supra, 922 F.2d at 798 (affirming summary judgment of non-infringement).

## Conclusion

For the foregoing reasons, MetLife respectfully submits that it is entitled to summary

judgment (1) dismissing Bancorp's counterclaim for patent infringement; and (2) granting MetLife's request for a declaratory judgment that MetLife does not infringe the '792 Patent.

Dated: April 26, 2005                                       Respectfully Submitted,


/s/ John H. Quinn III
John H. Quinn, #4110
Edwin L. Noel, #19571
Andrew B. Mayfield, #3779
ARMSTRONG TEASDALE LLP
One Metropolitan Square, Suite 2600
St. Louis, Missouri 63102-2740
(314) 621-5070
(314) 621-5065 (facsimile)

– and –

Joseph P. Zammit (JZ3422)
Edward Dolido (ED4084)
Felice B. Galant (FG5484)
FULBRIGHT & JAWORSKI L.L.P.
666 Fifth Avenue
New York, New York 10103
(212) 318-3000
(212) 318-3400 (facsimile)

ATTORNEYS FOR METROPOLITAN LIFE
INSURANCE COMPANY

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 26th day of April, 2005, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following:

Dirk DeYong
Lashly and Baer, P.C.
714 Locust St.
St. Louis, MO  63101-1699

Charles K. Verhoeven
David A. Perlson
Quinn Emanuel Urquhart Oliver & Hedges, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111

/s/ John H. Quinn III