# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

|  |  |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY,<br><br>       Plaintiff,<br><br>v.<br><br>BANCORP SERVICES, L.L.C., and BENEFIT FINANCE PARTNERS, L.L.C.,<br><br>       Defendants. | )<br>)<br>)  No. 4:00 CV 01927 (CEJ)<br>)<br>)<br>)<br>)<br>)<br>) |

## METLIFE'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

ARMSTRONG TEASDALE LLP
John H. Quinn, III, #4110
Edwin L. Noel, #19571
Andrew B. Mayfield, #3779
One Metropolitan Square, Suite 2600
St. Louis, Missouri 63102-2740
(314) 621-5070
(314) 621-5065 (facsimile)

– and –

FULBRIGHT & JAWORSKI L.L.P.
Joseph P. Zammit (JZ3422)
John A. Bauer (JB7467)
Edward P. Dolido (ED4084)
666 Fifth Avenue
New York, New York 10103
(212) 318-3000
(212) 318-3400 (facsimile)

Attorneys for Plaintiff Metropolitan Life Insurance Company

30952953.1

## TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| SUMMARY OF ARGUMENT | 1 |
| ARGUMENT | 3 |
| I. BANCORP CANNOT EVADE THE DEFINITIVE CONSTRUCTION OF THE RELEVANT CLAIM LIMITATION | 3 |
|     A. The Federal Circuit's Construction Is Binding | 3 |
|     B. MetLife's Interrogatory Response Is Irrelevant | 4 |
| II. THE EVIDENCE CONCLUSIVELY ESTABLISHES THAT METLIFE DOES NOT INFRINGE | 5 |
|     A. The Evidence Establishes That MetLife Does Not Infringe Bancorp's Patent | 5 |
|     B. Bancorp Has Not Identified Any Material Issue of Fact That Would Preclude Summary Judgment For MetLife | 8 |
|     C. Bancorp's Rule 11 Obligations | 11 |
| III. BANCORP DOES NOT SERIOUSLY ADVANCE EITHER A "DOCTRINE OF EQUIVALENTS" OR "AGENCY" THEORY | 12 |
|     A. Bancorp Does Not Allege Any Facts Supporting Its Assertion That MetLife Infringes Under The Doctrine Of Equivalents | 12 |
|     B. Bancorp's Speculation that Someone Besides MetLife Calculates "Surrender Value Protected Investment Credits" is Unfounded and Irrelevant | 14 |
| CONCLUSION | 15 |

## TABLE OF AUTHORITIES

Page

**CASES**

*Bancorp Svcs. L.L.C. v. Hartford Life Ins. Co.*,
  359 F.3d 1367 (Fed. Cir. 2004) .................................................................................. passim

*Drexel v. Union Prescription Ctr.*,
  582 F.2d 781 (3d Cir. 1978) .................................................................................................. 9

*Eagle Comtronics, Inc. v. Arrow Communication Labs.*,
  305 F.3d 1303 (Fed. Cir. 2002) .......................................................................................... 13

*F&J Enters. v. Columbia Broad. Sys.*,
  373 F. Supp. 292 (D. Ohio 1974) ........................................................................................ 8

*Faroudja Labs. v. Dwin Elec.*,
  1999 U.S. Dist. LEXIS 22987 (N.D. Cal. Feb. 24, 1999) ................................................ 15

*Graver Tank & Mfg. v. Linde Air Prods.*,
  339 U.S. 605 (1950) ............................................................................................................ 13

*Joy Techs, Inc. v. Flakt, Inc.*,
  6 F.3d 770 (Fed. Cir. 1993) .................................................................................................. 7

*Kustom Signals, Inc. v. Applied Concepts, Inc.*,
  264 F.3d 1326 (Fed. Cir. 2001), *cert. denied*, 535 U.S. 986 (2002) .......................... 13

*Laitram Corp. v. Rexnord, Inc.*,
  939 F.2d 1533 (Fed. Cir. 1991) ...................................................................................... 5, 7

*Maldonado v. Ramirez*,
  757 F.2d 48 (3d Cir. 1985) .................................................................................................. 9

*Matsushita Elec. Indus. v. Zenith Radio*,
  475 U.S. 574 (1986) ............................................................................................................ 14

*Moody v. St. Charles Co.*,
  23 F.3d 1410 (8th Cir. 1994) .............................................................................................. 9

*Schumer v. Laboratory Computer Sys.*,
  308 F.3d 1304 (Fed. Cir. 2002) ............................................................................................ 7

*Servants of Paraclete v. Great Am. Ins. Co.*,
  866 F. Supp. 1560 (D.N.M. 1994) ..................................................................................... 8

*Smith & Nephew Inc. v. Ethicon, Inc.*,
  276 F.3d 1304 (Fed. Cir. 2001) ............................................................................................ 7

*TM Patents L.P. v. IBM*,
  72 F. Supp. 2d 370 (S.D.N.Y. 1999) ................................................................................... 4

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
  520 U.S. 17 (1997) ........................................................................................................ 12, 13

# TABLE OF AUTHORITIES
(Continued)

Page

*Wilson v. IBM*,
  62 F.3d 237 (8th Cir. 1995) .................................................................................................. 9

**RULES**

Fed. R. Civ. P. 11 ........................................................................................................................ 11

Fed. R. Civ. P. 26(e)(2) ................................................................................................................. 5

Fed. R. Civ. P. 33(d)) .................................................................................................................... 4

Fed. R. Civ. P. 37(c) ..................................................................................................................... 5

Fed. R. Civ. P. 56(f) ...................................................................................................................... 2

Metropolitan Life Insurance Company ("MetLife") respectfully submits this Reply Memorandum of Law in Further Support of its Motion for Summary Judgment (1) dismissing the counterclaim of Bancorp Services L.L.C. ("Bancorp") for patent infringement, and (2) granting MetLife's claim for a declaratory judgment of non-infringement.

## Summary of Argument

MetLife's entitlement to summary judgment is straightforward:  MetLife's system, method and computer readable media for administering its Stable Value BOLI/COLI policies ***do not*** calculate "surrender value protected investment credits" as that term has been definitively construed by the Federal Circuit with respect to the patent at issue in this case (the "'792 Patent").  Bancorp has not meaningfully disputed this fact, notwithstanding that it has possession of the computer program MetLife uses to administer its policies.  Therefore, because every claim of the '792 Patent explicitly requires the calculation of these "surrender value protected investment credits," and MetLife does not calculate them, MetLife cannot infringe any claim of the '792 Patent as a matter of law and respectfully submits that it is entitled to summary judgment.

Bancorp has opposed this motion on two grounds, both of which are transparently baseless.  First, ignoring reality and common sense, Bancorp somehow contends that when the Federal Circuit held that the term "surrender value protected investment credits" was not ambiguous, and that it clearly meant "the credits necessary to make up any shortfall between the actual value of a particular investment at a particular time and the amount the SVP writer had promised to pay on that investment if the policy were surrendered at any particular time," Bancorp Svcs. L.L.C. v. Hartford Life Ins. Co., 359 F.3d 1367, 1374 (Fed. Cir. 2004), it was not really construing the term.  Rather, Bancorp strangely argues that the Federal Circuit was correct

30952953.1

in holding that the term was unambiguous, but wrong in its understanding as to what it means.[1] Even though Bancorp does not like it, the Federal Circuit was very clear in defining that claim term as used in the '792 Patent and Bancorp is bound by its determination.

Second, Bancorp points to a few internal MetLife documents which appear to reflect that MetLife contemplated calculating values equivalent to "surrender value protected investment credits" when it was developing its administration system, and argues that such references create a material issue of fact as to what functions MetLife's administration system performs. (Alternatively, Bancorp has made a motion, ostensibly pursuant to Fed. R. Civ. P. 56(f) for additional discovery, which MetLife addresses separately).  Bancorp's reliance upon obviously tentative planning documents, and its plea for further discovery, represent a desperate attempt to oppose an indisputably meritorious motion.  As Bancorp well knows, what MetLife may have once *considered* doing (which, at best, is all that these documents show), is irrelevant to the question of patent infringement.  The key question is what did MetLife *actually do*.

That question is definitively answered by the source code for MetLife's SV COLI/BOLI administration system*, which MetLife produced to Bancorp and which discloses precisely what MetLife's system does.*  Significantly, Bancorp has not even addressed the accused system.[2]  The

---

[1]  Bancorp never quite explicitly states that the Federal Circuit's construction of the claim term was wrong – because, having obtained the benefit of the Federal Circuit's reversal of the Court's determination that the phrase is ambiguous, Bancorp cannot now argue that the Federal Circuit was wrong in so holding – but it makes the argument that the Federal Circuit's statements as to what this "unambiguous" phrase actually "means" is not really a construction of that phrase at all.  Then Bancorp argues that the phrase actually means something completely different than what the Federal Circuit says it means.  See Bancorp's Opp. at p. 20, ¶ C (arguing that the phrase really means "the increase in the value (i.e., the 'credit') of the stable value protected investment necessary to achieve the targeted return of the fund.").

[2]  Bancorp states in its separate "Rule 56(f) Motion" that it just recently received the source code from MetLife.  However, as pointed out in MetLife's opposition to that purported motion, MetLife repeatedly offered to extend Bancorp's time to respond to this motion for summary judgment for whatever length of time Bancorp reasonably needed in order for Bancorp to have time to fully evaluate the source code.  Bancorp declined that offer, thus electing to proceed with this motion while foregoing a full examination of the very system that it claims infringes its patent.

reason is obvious:  That system does not do what it would have to do to infringe the patent. What MetLife may have considered, but not implemented, cannot render MetLife an infringer, and no amount of discovery or speculation will change what MetLife's system actually does.

Accordingly, because MetLife does not infringe and Bancorp cannot show otherwise, MetLife should be spared the burden of further useless discovery and should be permitted to compete in the SV COLI/BOLI marketplace free of the cloud over its right to do so created by the continued pendency of Bancorp's bogus claims of infringement.

## ARGUMENT

### I. BANCORP CANNOT EVADE THE DEFINITIVE CONSTRUCTION OF THE RELEVANT CLAIM LIMITATION

#### A. The Federal Circuit's Construction Is Binding

Bancorp goes through linguistic contortions to argue that the Federal Circuit never actually "construed" the relevant claim term and that MetLife somehow "misrepresents" the holding of the Federal Circuit.  See, e.g., Bancorp's Opp. at pp. 14-15.  All it takes is a reading of the Federal Circuit's decision to reveal the fallacy of Bancorp's argument.

The Federal Circuit explicitly looked at both the intrinsic and extrinsic evidence to reach a conclusion as to what the phrase "surrender value protected investment credits" means and, based on that analysis, held that the phrase had a clear meaning:

> *"surrender value protected investment credits" means the difference between the actual value of a protected investment and the targeted return value of that investment at the time the protected life insurance policy is surrendered.  From this analysis, we conclude that the term "surrender value protected investment" is not indefinite. . . .*

Bancorp Svcs., L.L.C. v. Hartford Life Ins. Co., 359 F.3d 1367, 1372 (Fed. Cir. 2004) (emphasis added).  See also id. at 1374 (restating the same definition of the term).

The Federal Circuit's interpretation of the disputed claim language was the necessary and

explicit predicate (i.e., "[f]rom this analysis we conclude . . .") for its holding that the term "surrender value protected investment credits" was not indefinite. That construction of the claim language is binding on Bancorp. E.g., TM Patents L.P. v. IBM, 72 F. Supp. 2d 370 (S.D.N.Y. 1999). Bancorp cannot now argue that the phrase actually means something different.[3]

### B. MetLife's Interrogatory Response Is Irrelevant

Grasping at straws, Bancorp is reduced to arguing that MetLife has "admitted" in an interrogatory response that this Court has not construed the '792 Patent. In supplementing its response to an interrogatory asking MetLife to state all the factual bases for contending that it did not infringe each claim of the '792 Patent, MetLife responded by identifying a number of documents (as permitted by Fed. R. Civ. P. 33(d)) and concluded: "MetLife further states that the Court has not yet construed the claims of the '792 Patent and reserves the right to further supplement its response to this interrogatory in light of such construction." See Bancorp's Opp. at p. 16 and Perlson Decl. Ex. S.

Quite simply, MetLife's interrogatory response is both accurate and wholly irrelevant to this motion. Even Bancorp concedes that the claims of the '792 Patent have not yet been construed by this Court. See Bancorp's Responses To Metlife's Statement of Undisputed Material Facts In Support Of Its Motion For Summary Judgment at ¶ 1. Thus, MetLife was not then, and is not presently, in a position to set forth *all* of its contentions as to why its policy administration does not "infringe[] each such claim either literally or under the doctrine of

---

[3] Bancorp argues that the Federal Circuit would have committed an "error" had it construed the term without considering extrinsic evidence this Court had rejected. See Bancorp's Opp. at p. 15. However, the Federal Circuit did expressly consider the extrinsic evidence Bancorp had presented. 359 F.3d at 1374-75. Moreover, the Federal Circuit already disposed of that argument by noting that the intrinsic evidence, alone, was sufficient to construe the phrase and "even if the district court's analysis of the extrinsic evidence were correct [i.e., "that the term 'surrender value protected investment credits' would not have been understandable to a person of skill in the field of insurance administration"], the court's summary judgment of indefiniteness would have to be overturned." 359 F.3d at 1374.

equivalents and the complete factual basis therefor," as the interrogatory requested. MetLife's statement that this Court has not construed the claims of the '792 Patent was, therefore, both literally true and made for an obviously proper purpose, namely, to preserve the right to supplement the interrogatory response once this Court had rendered the definitive construction of the claims that would permit MetLife to formulate a proper response.[4]

However, while none of the *claims* of the '792 Patent have been construed by this Court, the fact is that *one limitation* appearing within every independent claim has been construed by the Federal Circuit, as discussed above. Because as a matter of law there can be no infringement of any claim of the '792 Patent when MetLife's system does not satisfy this limitation (see Point II.A., below), it is irrelevant that the claims themselves have not been fully construed by this Court. (Indeed, in the present posture of the case, the claims may never have to be construed at all because Bancorp's inability to show that MetLife's system satisfies that limitation is, alone, wholly dispositive of the issue of infringement.) The single claim limitation that has been definitively construed is enough to preclude any infringement as a matter of law because "the failure to meet a single limitation is sufficient to negate infringement of the claim." Laitram Corp. v. Rexnord, Inc., 939 F.2d 1533, 1535 (Fed. Cir. 1991).

II. **THE EVIDENCE CONCLUSIVELY ESTABLISHES THAT METLIFE DOES NOT INFRINGE**

   A. **The Evidence Establishes That MetLife Does Not Infringe Bancorp's Patent**

The '792 Patent contains "system claims" ('792 Patent claims 1-8 and 9-27), "method

---

[4] Bancorp's assertion that Fed. R. Civ. P. 37(c) provides grounds for denying this motion is groundless because there was nothing inaccurate about MetLife's interrogatory response and no basis for supplementing that response until such time as this Court actually rendered a claim construction. Moreover, Rule 26(e)(2) (explicitly incorporated within Rule 37(c)) makes it clear that amendment of an interrogatory response is not necessary where "the additional or corrective information has ... otherwise been made known to the other parties during the discovery process or in writing."

claims" (id. claims 9-17 and 28-37) and a "computer readable media claim" (id. claim 18).  (A copy of the '792 Patent is annexed as Ex. 1 to the Declaration of Joseph P. Zammit dated April 26, 2005 submitted in support of this motion, the "Zammit Moving Decl.").  The evidence before this Court establishes that MetLife does not infringe any of those claims because it does not calculate "surrender value protected investment credits."

MetLife's system for administering SV COLI/BOLI policies, referred to as the "Vantage System," does not calculate the difference between the market value of the investments underlying a policy and the book value of the policy, which difference, when calculated at the time a policy is surrendered, is what the Federal Circuit held to be the "surrender value protected investment credit" required by every independent claim of the '792 Patent.  Hartford, 359 F.3d at 1372 and 1374.  See the Moving Declaration of Sebastian Janssen dated April 21, 2005 at ¶¶ 5-7; the Reply Declaration of Sebastian Janssen dated June 30, 2005 at ¶ 2; the Declaration of Shelley Lang dated April 20, 2005, at ¶ 3; and the Reply Declaration of Shelley Lang dated June 29, 2005, at ¶ 6 (such declarations are hereinafter referred to as the respective declarant's "Moving Decl." and "Reply Decl.").[5]  These facts are undisputed inasmuch as Bancorp, which has possession of the source code for the Vantage System, has failed to identify anything in it which enables this value to be calculated.  Because no amount of additional discovery will change what the Vantage System can do, MetLife cannot be found to infringe the "system" or "computer readable media" claims of the '792 Patent, regardless of any such additional discovery.  E.g.,

---

[5]  The fact that every claim of the '792 Patent requires "calculating" or "means for calculating" "surrender value protected investment credits" is self-evident from the '792 Patent itself inasmuch as every independent claim of the patent uses those very words.  (Zammit Moving Decl. Ex. 1).  The Federal Circuit explicitly noted this fact: "All of the independent claims in the '792 patent refer to 'surrender value protected investment credit for the life insurance policy'."  Hartford, 359 F.3d at 1371.  Nevertheless, Bancorp has inexplicably refused on this motion to admit even that incontrovertible fact.  See Bancorp's Responses To MetLife's Statement of Undisputed Material Facts at ¶ 2.

Laitram Corp., supra, 939 F.2d at 1535 (no infringement if a single claim limitation is not met).

Similarly, MetLife cannot be found to infringe the "method" claims of the '792 Patent because, even though MetLife is theoretically "capable" of calculating that value outside of the Vantage System, the uncontradicted evidence before this Court establishes that MetLife does not calculate this value outside the Vantage System in administering its SV COLI/BOLI policies. See Janssen Moving Decl. at ¶ 5; Janssen Reply Decl. at ¶ 2. Unless and until MetLife were actually to do so, which it does not, it cannot infringe the method claims of the '792 Patent – even though in theory it could in the future calculate that value – because it is black letter law that a method claim can only be infringed by *actual performance of all of the steps* of the claim. Smith & Nephew Inc. v. Ethicon, Inc., 276 F.3d 1304, 1310-11 (Fed. Cir. 2001); Schumer v. Laboratory Computer Sys., 308 F.3d 1304, 1309 n. 3 (Fed. Cir. 2002); Joy Techs, Inc. v. Flakt, Inc., 6 F.3d 770, 773-75 (Fed. Cir. 1993).

Moreover, even if there were an issue of fact as to whether MetLife ever performed that calculation in the past outside the Vantage System, that factual issue could not preclude summary judgment, because such an issue of fact would not be *material*. This is so because the Federal Circuit has held that the calculation of "surrender value protected investment credits" must be performed "at the time the protected life insurance policy is surrendered." Hartford, 359 F.3d at 1372. Here, the uncontroverted evidence establishes that no MetLife SV COLI/BOLI policy has ever been surrendered (Janssen Decl. ¶ 6; Janssen Reply Decl. ¶¶ 2, 9 & 17).[6] Therefore, no such computation could constitute calculation of "surrender value protected investment credits" as that term has been defined by the Federal Circuit.

---

[6] Bancorp does not contend otherwise. It argues only that a policy "could" be surrendered (which, albeit unlikely to occur, is undisputed), and does not argue that any policy actually has been surrendered. See Bancorp's Opp. at p. 10.

In short, as a matter of law, MetLife cannot infringe the '792 Patent, regardless of how the other limitations of the patent's claims may ultimately be construed, if MetLife does not calculate "surrender value protected investment credits," an element contained in every claim. There is no question whatsoever regarding what it means to calculate "surrender value protected investment credits," because the Federal Circuit has already ruled on that issue, and there is no question whatsoever that MetLife does not perform such calculation in administering its policies. MetLife is, therefore, entitled to judgment on that issue.

### B. Bancorp Has Not Identified Any Material Issue of Fact That Would Preclude Summary Judgment For MetLife

MetLife's administration system has not been programmed to calculate "surrender value protected investment credits" and, therefore, does not infringe the '792 Patent. This is a negative proposition – MetLife's system does not do something – and MetLife has "proven the negative" by supplying declarations by the two people most knowledgeable about MetLife's administration of its SV COLI/BOLI policies: Shelley Lang, MetLife's IT Project Manager, and Sebastian Janssen, the MetLife Vice President and Actuary responsible for developing the procedures for administering SV COLI/BOLI policies.

Contrary to Bancorp's assertions, declarations of this type, under these circumstances, are not impermissibly "conclusory" or "self serving" and they provide a sufficient basis for granting summary judgment. See, e.g., Servants of Paraclete v. Great Am. Ins. Co., 866 F.Supp. 1560, 1565 (D.N.M. 1994) (noting that defendants confused "concise" with "conclusory" and that an affidavit is not conclusory unless it draws factual inferences rather than states facts; a concise affidavit based on personal knowledge is not conclusory); F&J Enters. v. Columbia Broad. Sys., 373 F. Supp. 292, 298-99 (D. Ohio 1974) (in defamation action, affidavits stating that affiants

"had never heard of plaintiff" and did not "bear any personal malice or ill-will toward plaintiff" were not self-serving and provided adequate grounds for granting summary judgment absent facts showing that such statements were untrue or made in bad faith). Here, Ms. Lang and Mr. Janssen have personal knowledge of MetLife's system and method for administering SV COLI/BOLI policies, and they have stated that MetLife does not calculate "surrender value protected investment credits." There is nothing more that can be said about something MetLife does not do, other than to state that MetLife does not do it.[7]

It is incumbent upon Bancorp to show the existence of a genuine issue of material fact. "[T]o withstand the motion for summary judgment, [the non-moving party] must substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy." Wilson v. IBM, 62 F.3d 237, 241 (8th Cir. 1995), quoting, Moody v. St. Charles Co., 23 F.3d 1410, 1412 (8th Cir. 1994). This is especially true where, as here, the party opposing the motion bears the burden of proof. See MetLife's Moving Brief at pp. 6-7. Bancorp already has all the evidence it would need because, if MetLife's system did calculate the "surrender value protected investment credits," then it would be apparent from the source code which controls the system. See Lang Reply Decl. ¶¶ 10-

---

[7] These are not "self-serving" and "conclusory" affidavits of the type condemned in the two cases Bancorp cites. Bancorp's Opp. at p. 19. In Drexel v. Union Prescription Ctr., 582 F.2d 781, 789-90 (3d Cir. 1978), the court held that where the question of fact turned upon whether a franchisor had legal "control" over a franchisee, an affidavit conclusorily denying the exercise of "control" was insufficient. Similarly, in Maldonado v. Ramirez, 757 F.2d 48, 51 (3d Cir. 1985), the court noted that an attorney's affidavit stating that another attorney "continuously represented" a party was not based on personal knowledge and represented only one possible "inference" from the facts and, at that, "not an inexorable one." Bancorp chastises MetLife for not providing "documentary evidence," but the only meaningful documentary evidence would be the source code for the computer system MetLife uses and that source code is already in Bancorp's possession together with system manuals and technical specifications. (Those documents have been produced to Bancorp under Bates Nos. MET226262, MET073239-083982 and MET063854-064000). Because it is unlikely that the Court would want to analyze source code and technical manuals itself, Ms. Lang concisely supplies the material fact in her declaration. Bancorp, which has the source code and other documents, is free to attempt to contradict Ms. Lang but, notably, has not done so.

11.     Bancorp has been provided with the source code for MetLife's administration system and, therefore, had the ability to show the Court that Ms. Lang and Mr. Janssen were wrong, if that were the case.  But Bancorp has not done so.

Since the source code *is* MetLife's administration system, that is the beginning and the end of the inquiry.  If the source code reveals that no calculation of "surrender value protected investment credits" is performed, then the system does not do it.  No amount of depositions or document productions will change the fact that a computer will perform only the functions it is programmed to perform.  Lang Reply Decl. ¶¶ 10-11.  Bancorp, however, has not pointed to anything in the source code that would render MetLife infringing.  If Bancorp cannot show that now, it will not be able to show it later.

Instead of looking to MetLife's actual administration system as embodied in the source code, Bancorp presents the Court with a number of early documents which, at best, show that when MetLife was designing its system, it contemplated that something akin to surrender value protected investment credits might be calculated, or which state that the "value" of the stable value "wrap" could be represented by the difference between book and market values.  Mr. Janssen addresses each of those references in his Reply Declaration at ¶¶ 3-18, and points out that not one describes anything that MetLife was actually doing in administering SV COLI/BOLI policies.  As most of those documents predate the existence of any system for administering such policies – indeed, predate the existence of any such MetLife policies – it is obvious that none of those documents are reflective of anything that MetLife actually did in administering its policies.

From the very face of the documents Bancorp relies upon, it is apparent that they do not reflect actual policy administration (1) because they were created before MetLife was administering any policies; and/or (2) they obviously reflect only tentative planning.  Whether or

not documents such as those might be sufficient to create an issue of fact in a situation where they represented the only information available, this is not such a situation. Here, Bancorp has possession of the source code for the allegedly infringing system. That source code is conclusive on the issue of what MetLife's system does, because it is the system that is being accused of infringement. See Lang Reply Decl. ¶ 11. It is inexcusable that Bancorp completely fails to address the actual administration system and, instead, relies on innuendo and inference based on early planning documents. This cannot give rise to a genuine issue of material fact.

### C. Bancorp's Rule 11 Obligations

The Court should not lose sight of the fact that Bancorp accused MetLife of patent infringement in a Complaint filed on July 13, 2004. As discussed in MetLife's moving brief (at p. 9), but never even addressed by Bancorp, Fed. R. Civ. P. 11 imposes an obligation on Bancorp to have had a factual foundation for its accusation of infringement before filing its Complaint. Further, in opposing MetLife's motion to dismiss that Complaint, Bancorp affirmatively misrepresented to the Court that it in fact actually had evidence that MetLife infringed the patent:

> As ***Bancorp had evidence that MetLife was*** now in fact selling a BOLI/SVP product and ***using Bancorp's patented technology*** in relation thereto, Bancorp filed its Complaint for patent infringement ... on July 13, 2004. [Emphasis added.]

See Ex. 18 to the declaration of Joseph P. Zammit dated July 7, 2005, filed in support of MetLife's Opposition to Bancorp's Rule 56(f) Motion (the "Zammit Rule 56(f) Decl."). That "evidence" obviously did not exist; if it did, Bancorp would have used it to oppose this motion.[8]

---

[8] The only "evidence" Bancorp presented to the Court in opposition to this motion consisted of documents Bancorp *acquired after* it represented to the Court that it had evidence of infringement. See Zammit Rule 56(f) Decl. ¶ 30. The only non-attorney affidavit submitted by Bancorp in opposition to this motion, by Chris Garlich, one of the inventors of the invention claimed in the '792 Patent, did not even address issues of infringement, but recited only the alleged background of the invention.

Further, the documents Bancorp now relies upon to oppose the motion are the same documents it has previously acknowledged cannot be relied upon for that purpose. Specifically, by letter dated May 2, 2005, David A. Perlson, Bancorp's counsel, explicitly requested MetLife's source code, noting (at p. 1) that "the documentation you have provided regarding administration is a smattering of worksheets, emails, and memoranda. For many of these, there are several drafts making it difficult to tell what is actually in use. MetLife has also provided no software for its system, much less source code ... ." (A copy of this letter is annexed as Ex. G to the June 16, 2005, Declaration of David A. Perlson in Support of Bancorp's Rule 56(f) Motion.) MetLife took immediate steps to produce its source code in response to this letter and Bancorp now has possession of the source code it demanded. Yet, instead of addressing that source code, Bancorp simply ignores it and instead relies on the very same documents from which it had previously asserted no conclusion could be drawn. See Zammit Rule 56(f) Decl. at ¶¶ 8-26.

### III. BANCORP DOES NOT SERIOUSLY ADVANCE EITHER A "DOCTRINE OF EQUIVALENTS" OR "AGENCY" THEORY

#### A. Bancorp Does Not Allege Any Facts Supporting Its Assertion That MetLife Infringes Under The Doctrine Of Equivalents

Infringement under the doctrine of equivalents requires that the claim limitation *equivalent* be found in the accused device. Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 29 (1997). Infringement under the doctrine of equivalents is determined on an element by element basis:

> Each element contained in a patent claim is deemed material to defining the scope of the patented invention, and ***thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole.*** It is important to ensure that the application of the doctrine, even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety.

Id. (emphasis added).

An element in an accused product is equivalent to a claim limitation if differences between the two are "insubstantial" to one of ordinary skill in the art. Eagle Comtronics, Inc. v. Arrow Communication Labs., 305 F.3d 1303, 1315 (Fed. Cir. 2002).  This inquiry proceeds by determining whether the element in the accused device "performs substantially the same function in substantially the same way to obtain the same result" as the claim limitation. Graver Tank & Mfg. v. Linde Air Prods., 339 U.S. 605, 608 (1950).

Bancorp's argument that MetLife infringes under the doctrine of equivalents seems to be a re-assertion that MetLife *literally* infringes the claims:

> Given that MetLife's documents show a calculation of the difference between book value and market value, if MetLife's administration system for its stable value insurance products is not entirely identical to the relevant claims, a genuine issue of material fact exists as to whether it is substantially equivalent.

Bancorp's Opp. at p. 22.  The uncontroverted evidence discussed above establishes that MetLife does not literally infringe, and Bancorp never identifies anything that MetLife does that could even arguably be deemed the "equivalent" of calculating the difference between book value and market value.  (Nor is it apparent how something could achieve "substantially the same result" in "substantially the same way" as a calculation of a difference other than by doing the calculation.)

Instead, Bancorp misleadingly suggests that the relevant inquiry is whether MetLife's administration system, as a whole, "is substantially equivalent" to Bancorp's.  But that is precisely the formulation for the doctrine of equivalents that the Supreme Court rejected in Warner-Jenkinson, supra.  "[T]he doctrine of equivalents must be applied to individual elements of the claim, ***not to the invention as a whole.***" 520 U.S. at 29. See also id. at 40 ("the determination of equivalence should be applied as an objective inquiry on an element-by-element basis."); Kustom Signals, Inc. v. Applied Concepts, Inc., 264 F.3d 1326, 1333 (Fed. Cir. 2001)

("No claimed element, or an equivalent thereof, can be absent if the doctrine of equivalents is invoked"); cert. denied, 535 U.S. 986 (2002). Because MetLife's system contains no equivalent to a calculation of "surrender value protected investment credits," then there can be no infringement under the doctrine of equivalents, regardless of whether it could be said that the two systems, in their entireties, produce substantially equivalent results. Bancorp has not identified *anything* in MetLife's system that it even contends to be "equivalent" to a calculation of surrender value protected investment credits and, therefore, summary judgment in MetLife's favor is appropriate because no issue has been raised under the doctrine of equivalents.

> B. **Bancorp's Speculation that Someone Besides MetLife Calculates "Surrender Value Protected Investment Credits" is Unfounded and Irrelevant**

Bancorp hypothesizes that "it is highly probable" that a "wrap provider for MetLife's stable value insurance products would calculate the amount that it is bound to guarantee." Bancorp's Opp. at p. 21. Yet Bancorp provides no evidence whatsoever to support such speculation, and it cannot defeat a motion for summary judgment with such naked conjecture because the opponent of a summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. v. Zenith Radio, 475 U.S. 574, 586 (1986).[9]

Moreover, as discussed above, mere calculation of the difference between the book value

---

[9] Bancorp points to a single document that states: "[t]he wrap provider and MetLife agree in advance to the methodology" which "results in a determination of a BV crediting rate based on ... the relationship of BV [i.e., book value] to MV [i.e., market value]." Bancorp's Opp. at p. 21. But the document Bancorp points to plainly has nothing to do with calculation of "surrender value protected investment credits" and is irrelevant here. The very sentence in that document quoted by Bancorp ("this methodology results in a determination of a BV crediting rate ...") makes clear that the document is discussing calculation of a *crediting rate* (which Bancorp's patent calls the "targeted return") and not "surrender value protected investment credits." Bancorp's own patent discloses that the relevant "relationship" for purposes of calculating the targeted return is a ratio between book value and market value, not a calculation of the difference between them. (See the formula in the '792 Patent (Zammit Moving Decl. Ex. 1) at Col. 3 line 29).

(or "stable value") and market value of a policy does not constitute calculation of "surrender value protected investment credits," as defined by the Federal Circuit, unless such calculation is made "at the time the protected life insurance policy is surrendered." Hartford, 359 F.3d at 1372. Because no MetLife SV COLI/BOLI policy has ever been surrendered (Janssen Decl. ¶ 6; Janssen Reply Decl. ¶¶ 2, 17), by definition no third party could have performed the step required by the '792 Patent of calculating "surrender value protected investment credits." This entire line of speculation is, therefore, a red herring.

In any event, were a third party to calculate "surrender value protected investment credits" as defined by the Federal Circuit, it would not render MetLife an infringer unless, at a minimum, such calculation were performed at MetLife's behest. See, e.g., Faroudja Labs. v. Dwin Elec., 1999 U.S. Dist. LEXIS 22987 (N.D. Cal. Feb. 24, 1999) (distinguishing each of the cases Bancorp cites on this point and holding that a third party's actions must have been for the knowing benefit of the accused infringer before they can be attributed to the alleged infringer). If wrap providers do perform such calculation, as Bancorp speculates, they would be doing so purely for their own purposes, as MetLife neither requested nor received such calculation. See Janssen Reply Decl. at ¶ 19. Thus, Bancorp's naked speculation, even if there were a basis for it, does not alter the fact that MetLife is entitled to the summary judgment it seeks.

## CONCLUSION

For the foregoing reasons, MetLife respectfully submits that it is entitled to summary judgment (1) dismissing Bancorp's counterclaim for patent infringement; and (2) granting MetLife's request for a declaratory judgment that MetLife does not infringe the '792 Patent.

Dated: July 11, 2005  RESPECTFULLY SUBMITTED,

  /s/ John H. Quinn, III
John H. Quinn, III, #4110
Edwin L. Noel, #19571
Andrew B. Mayfield, #3779
ARMSTRONG TEASDALE LLP
One Metropolitan Square, Suite 2600
St. Louis, Missouri 63102-2740
(314) 621-5070
(314) 621-5065 (facsimile)

– and –

Joseph P. Zammit (JZ3422)
John A. Bauer (JB7467)
Edward P. Dolido (ED4084)
FULBRIGHT & JAWORSKI L.L.P.
666 Fifth Avenue
New York, New York 10103
(212) 318-3000
(212) 318-3400 (facsimile)

Attorneys for Plaintiff
Metropolitan Life Insurance Company