# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | No. 4:00 CV 01927 (CEJ) |
| v. | ) ) | |
| BANCORP SERVICES, L.L.C., and BENEFIT FINANCE PARTNERS, L.L.C., | ) ) ) | |
| Defendants. | | |

## METLIFE'S OPPOSITION TO BANCORP'S MOTION FOR ADDITIONAL DISCOVERY PURSUANT TO RULE 56(f)

| | | |
|---|---|---|
| ARMSTRONG TEASDALE LLP | | FULBRIGHT & JAWORSKI L.L.P. |
| John H. Quinn, III, #4110 | – and – | Joseph P. Zammit (JZ3422) |
| Edwin L. Noel, #19571 | | Edward P. Dolido (ED4084) |
| Andrew B. Mayfield, #3779 | | Felice B. Galant (FG5484) |
| One Metropolitan Square, Suite 2600 | | 666 Fifth Avenue |
| St. Louis, Missouri 63102-2740 | | New York, New York 10103 |
| (314) 621-5070 | | (212) 318-3000 |
| (314) 621-5065 (facsimile) | | (212) 318-3400 (facsimile) |

Attorneys for Plaintiff Metropolitan Life Insurance Company

25549501.1

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..................................................................................................... ii
INTRODUCTION ........................................................................................................................ 1
ARGUMENT ................................................................................................................................ 4
BANCORP'S RULE 56(f) MOTION SHOULD BE DENIED ..................................................... 4
    A.    Bancorp's Motion Is Procedurally Improper ............................................................ 4
    B.    Bancorp Has Failed To Make The Requisite Showing For Relief Under Rule 56(f) ................................................................................................................. 6
    C.    In Light Of Its Rule 11 Obligations, Bancorp Cannot Resist Summary Judgment By Insisting On Additional Discovery In This Patent Case .................. 9
    D.    Bancorp's Complaints About MetLife's Discovery Responses Are Ill-Founded And Irrelevant ................................................................................... 10
CONCLUSION ........................................................................................................................... 13

## TABLE OF AUTHORITIES

Page

**CASES**

*Allen v. Bridgestone/Firestone, Inc.*,
    81 F.3d 793 (8th Cir. 1996) .................................................................................. 11

*Antonious v. Spalding & Evenflo Cos., Inc.*,
    275 F.3d 1066 (Fed. Cir. 2002) .......................................................................... 9, 10

*Bancorp Services, L.L.C. v. Hartford Life Ins. Co.*,
    359 F.3d 1367 (Fed. Cir. 2004) .............................................................................. 10

*Banque Nat. de Paris S.A. v. Insurance Co. of North America*,
    896 F. Supp. 163 (S.D.N.Y. 1995) ........................................................................... 7

*Committee for First Amendment v. Campbell*,
    962 F.2d 1517 (10th Cir. 1992) ................................................................................ 5

*Contemporary Mission, Inc. v. U.S. Postal Service*,
    648 F.2d 97 (2d Cir. 1981), *cert. denied*, 502 U.S. 856 (1991) ............................. 7

*Gray v. Town of Darien*,
    927 F.2d 69 (2d Cir. 1991) ....................................................................................... 7

*Hoffer v. Microsoft Corp.*,
    405 F.3d 1326 (Fed. Cir. 2005) ................................................................................ 8

*Humphreys v. Roche Biomedical Laboratories, Inc.*,
    990 F.2d 1078 (8th Cir. 1993) .................................................................................. 6

*Krim v. BancTexas Group*,
    989 F.2d 1435 (5th Cir. 1993) .................................................................................. 7

*Moore U.S.A., Inc. v. Standard Register Co.*,
    229 F.3d 1091 (Fed. Cir. 2000), *cert. denied*, 532 U.S. 1008 (2001) ................ 7, 8

*Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*,
    739 F.2d 624 (Fed. Cir. 1984) .................................................................................. 9

*Seils v. Rochester School Dist.*,
    192 F. Supp. 2d 100 (W.D.N.Y. 2002),
    *aff'd*, 2004 U.S. App. LEXIS 11334 (2d Cir. 2004),
    *cert. denied*, 125 S. Ct. 1640 (2005). ..................................................................... 7

*Simmons Oil Corp. v. Tesoro Petroleum Corp.*,
    86 F.3d 1138 (Fed. Cir. 1996) .................................................................................. 7

*Spectra Corp. v. Lutz*,
    839 F.2d 1579 (Fed. Cir. 1988) ................................................................................ 8

*View Engineering, Inc. v. Robotic Vision Systems, Inc.*,
    208 F.3d 981 (Fed. Cir. 2000) .................................................................................. 9

## TABLE OF AUTHORITIES
(Continued)

Page

*Willmar Poultry Co. v. Morton-Norwich Products, Inc.*,
  520 F.2d 289 (8th Cir. 1975), *cert. denied*, 424 U.S. 915 (1976).............................................. 6

**RULES**

Fed. R. Civ. P. 11 ............................................................................................................ 3, 4, 9, 10

Fed. R. Civ. P. 33(d) .................................................................................................................. 11

Fed. R. Civ. P. 34(b) .................................................................................................................. 12

Fed. R. Civ. P. 56 .......................................................................................................................... 6

Fed. R. Civ. P. 56(f) ............................................................................................................. passim

**Introduction**

Plaintiff Metropolitan Life Insurance Company ("MetLife") submits this memorandum in opposition to the purported motion of defendant/counterclaim-plaintiff Bancorp Services L.L.C. ("Bancorp") for additional discovery pursuant to Fed. R. Civ. P. 56(f).[1]  Not only is this so-called "motion" procedurally improper in light of the provisions of Rule 56(f), more importantly it utterly fails to make the showing necessary under that rule to defeat or delay consideration of a summary judgment motion.

Bancorp's papers ignore the single indisputable fact that makes it impossible for Bancorp to bring itself within Rule 56(f), namely, that whatever MetLife's accused administration system can or cannot do is thoroughly revealed in the system's computer source code and that source code has been produced to Bancorp.  The issue on MetLife's pending motion for summary judgment is extremely narrow:  does MetLife's stable value COLI/BOLI administration system calculate the difference between book and market value as the Federal Circuit has held is required by every claim of Bancorp's patent?  *Unless the source code contains the computer instructions to direct the system to perform that calculation, the answer must be no.*

Despite having received the source code, as well as all relevant related manuals and technical specifications, Bancorp has failed to point to any portion of that source code which it asserts does or may perform the calculation in question.  Bancorp intentionally spurned MetLife's repeated offers to extend Bancorp's time to respond to the summary judgment motion in order to afford Bancorp ample opportunity to analyze the source code in detail.  <u>See</u> Declaration of Joseph

---

[1] Despite Bancorp's protestations, it is appropriate to refer to MetLife as "Plaintiff" and Bancorp as "Defendant Counterclaim-Plaintiff."  Regardless of the reasons, the Court's February 24, 2005 Order directed Bancorp to file its complaint as a counterclaim in this action, in which MetLife is and always has been the plaintiff.

P. Zammit in Opposition to Bancorp's Rule 56(f) Motion ("Zammit Declaration") ¶¶ 9-25. Knowing full well that an examination of the source code would not support its position, Bancorp preferred to turn a blind eye to the source code and to create a diversion by arguing that it has not been afforded other discovery which, it asserts, might give Bancorp a factual basis to oppose MetLife's motion.

Bancorp's position is essentially that all discovery must be completed before it has to respond to MetLife's motion for summary judgment. But no memorandum, email or note produced in further discovery, and no deposition testimony, can possibly change the source code.[2] The system either does or does not do the calculation in issue, and the system cannot do the calculation unless the source code implements that calculation. See Declaration of Richard A. Belgard in Opposition to Bancorp's Rule 56(f) Motion ("Belgard Declaration") ¶¶ 12 – 18. Hence, Bancorp cannot satisfy Rule 56(f) because no amount of further discovery could conceivably produce "facts essential to justify [Bancorp's] opposition" to MetLife's motion for summary judgment.

Moreover, it must not be forgotten that Bancorp has affirmatively asserted a claim of patent infringement against MetLife, and has repeatedly told this Court that it had a factual basis for that claim. In its Complaint for Patent Infringement (Zammit Declaration Ex. 16), filed on July 13, 2004, Bancorp alleged:

> 12. Upon information and belief, [MetLife] has been and is infringing the '792 patent by making, using, offering for sale, and selling an

---

[2] In its opposition to the motion for summary judgment, Bancorp has pointed to certain documents already produced by MetLife as somehow "evidence" that MetLife calculates the difference between book and market. As MetLife's reply to that opposition points out, Bancorp has misconstrued those documents. But what is important for purposes of the instant motion is that, regardless of what any document may say, it cannot change how the system actually works, which is dictated solely by the source code.

administrative method and system to track, reconcile and administer the values of life insurance policies in the manner claimed in the '792 patent.

Bancorp's Counterclaim in this action, filed on March 4, 2005 (Zammit Declaration Ex. 17), contains the identical allegation.

In its memorandum in opposition to MetLife's motion to dismiss its Complaint, filed on September 10, 2004 (Zammit Declaration Ex. 18), Bancorp stated:

> As **Bancorp had evidence** that MetLife was now in fact selling a BOLI/SVP product and **using Bancorp's patented technology** in relation thereto, Bancorp filed its Complaint for patent infringement . . . on July 13, 2004.  [Emphasis added.]

Where is the evidence that Bancorp told the Court it had when it filed its Complaint in July 2004?  What is the "information" forming the basis for the "belief" alleged in its Complaint and Counterclaim?  It certainly cannot have been the documents produced by MetLife which Bancorp cites in its opposition to MetLife's motion for summary judgment.  Bancorp received those documents after it filed its Complaint and after it filed the brief quoted above.  Zammit Declaration ¶ 30.

If Bancorp actually had had the requisite evidence of infringement mandated by Rule 11 when it sued MetLife, that evidence would be sufficient in itself to create a disputed issue of material fact, and resort to Rule 56(f) would be unnecessary.  Since Bancorp has failed to come forward with any such evidence in opposition to the motion for summary judgment, one can only conclude that there was no proper basis to institute an action for infringement in the first place.

Bancorp is asking the Court to allow it to continue discovery based on the completely unrealistic speculation that it might be able to find evidence to defeat MetLife's summary judgment motion.  Permitting such discovery would be an exercise in futility, given that the already produced software is conclusive of the issue presented by the summary judgment motion.

Moreover, denying or deferring MetLife's motion in order to permit further discovery would be to reward Bancorp for violating Rule 11 by not having had the necessary factual basis for instituting an infringement action in the first place.

For the reasons discussed below, Bancorp's purported motion pursuant to Rule 56(f) should be denied.

## ARGUMENT

## BANCORP'S RULE 56(f) MOTION SHOULD BE DENIED

### A. Bancorp's Motion Is Procedurally Improper

Rule 56(f) does not authorize filing a separate motion for discovery as Bancorp has done here. Rather, the rule permits a party opposing a summary judgment motion to make a showing that, for specified reasons, it cannot currently present facts essential to its opposition. The rule states:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

By filing a purported separate motion which is not contemplated by Rule 56(f), Bancorp has attempted to circumvent the local rules on the page length of memoranda of law and to create a right of sur-reply on MetLife's motion for summary judgment. Both of these motives are improper and Bancorp should not be permitted to manipulate Rule 56(f) in this fashion to gain an unfair procedural advantage. The Court should not accept any attempted "reply" papers with respect to this purported Rule 56(f) motion.

Moreover, Bancorp has failed to meet even the threshold requirement for relief under Rule 56(f), namely, that it make a showing by "affidavits of a party opposing the motion [for summary judgment]." Bancorp has not submitted the affidavit or declaration of any officer or employee of Bancorp making the requisite showing under Rule 56(f). The Declaration of David A. Perlson, one of Bancorp's attorneys, clearly does not satisfy the rule's requirement of "affidavits of a party." See Committee for First Amendment v. Campbell, 962 F.2d 1517, 1522 (10th Cir. 1992) ("Advocacy by counsel does not suffice for evidence or fact in the Rule 56(f) context.")

This is not a mere technical insufficiency. On the contrary, it is highly significant that Chris Garlich, a principal of Bancorp who is permitted under the protective order in this case to review confidential MetLife technical material (such as source code) otherwise classified as "Attorneys Only" because of his supposed expertise,[3] has failed to submit a declaration in support of Bancorp's Rule 56(f) motion. He has neither controverted the fact that the MetLife source code produced to Bancorp is definitive of the issue of whether MetLife's administrative system computes the difference between book and market value nor attempted to explain how anything obtained in further discovery could possibly overcome the definitive nature of the source code.[4]

---

[3] In his October 31, 2000 Memorandum and Order in this case (made prior to transfer to this District), Magistrate Judge Eaton held that: "I find that [Bancorp's counsel] has shown a compelling justification for allowing disclosure of MetLife's Type A information to one non-attorney employee of the defendants, namely Chris Garlick [sic]. Garlick [sic] is one of the founders of Bancorp; for several years he has been working on complex and esoteric computerized technology with financial and insurance applications . . . . [Bancorp's counsel] says that he (and Bancorp's lone in-house counsel) will lack the expertise to decide whether MetLife's technology is infringing, and that they must discuss that technology with Mr. Garlick [sic]." The Memorandum and Order expressly defines Type A information as including "source codes." By Order dated October 16, 2001, this Court affirmed Magistrate Judge Eaton's decision.

[4] Mr. Garlich submitted a declaration in opposition to MetLife's motion for summary judgment, but it fails to address the issue of source code and does not attempt to justify any further discovery.

### B.   Bancorp Has Failed To Make The Requisite Showing For Relief Under Rule 56(f)

"Rule 56 of the Federal Rules of Civil Procedure does not require trial courts to allow parties to conduct discovery before entering summary judgment." Humphreys v. Roche Biomedical Laboratories, Inc., 990 F.2d 1078, 1081 (8th Cir. 1993). While Rule 56(f) provides a mechanism to postpone a summary judgment motion where the opposing party would be unfairly disadvantaged if not permitted adequate discovery, this provision "is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious." Willmar Poultry Co. v. Morton-Norwich Products, Inc., 520 F.2d 289, 297 (8th Cir. 1975), cert. denied, 424 U.S. 915 (1976). The burden is on the party seeking the postponement to make the requisite showing under Rule 56(f). Id.

Bancorp submits no affidavits or declarations setting forth any facts demonstrating that further discovery is likely to aid Bancorp in establishing a disputed issue of material fact sufficient to justify denial of MetLife's very narrow motion for summary judgment. Instead, what is presented to the Court are conclusory attorney assertions that "[i]t is likely that unproduced MetLife documents will further contribute to Bancorp's showing that MetLife's administration of stable value products involves the calculation [in issue]" (Perlson Declaration ¶ 19), that "proper responses to interrogatories will likely prove useful for Bancorp's opposition to MetLife's summary judgment motion" (Perlson Declaration ¶ 20), and that through the 19 depositions it seeks "Bancorp will be able to explore whether MetLife's system calculates" the difference between book and market value (Perlson Declaration ¶ 21).

This constitutes little more than speculation and blind hope, and is blatantly insufficient to sustain Bancorp's burden under Rule 56(f). "It is not enough simply to assert, à la Wilkins Micawber, that 'something will turn up.'" Simmons Oil Corp. v. Tesoro Petroleum Corp., 86

F.3d 1138, 1144 (Fed. Cir. 1996). As the Federal Circuit noted in Simmons, a party invoking Rule 56(f) is "required to state with some precision the materials he hope[s] to obtain with further discovery, and exactly how he expect[s] those materials would help him in opposing summary judgment." 86 F.3d at 1144, quoting Krim v. BancTexas Group, 989 F.2d 1435, 1443 (5th Cir. 1993). "In a summary judgment context, an 'opposing party's mere hope that further evidence may develop prior to trial is an insufficient basis upon which to justify the denial of [a summary judgment] motion.'" Gray v. Town of Darien, 927 F.2d 69, 74 (2d Cir. 1991) (quoting Contemporary Mission, Inc. v. U.S. Postal Service, 648 F.2d 97, 107 (2d Cir. 1981)), cert. denied, 502 U.S. 856 (1991). The "court can reject a request for discovery [under Rule 56(f)], if it deems the request to be based on speculation as to what potentially could be discovered." Seils v. Rochester School Dist., 192 F. Supp. 2d 100, 116 (W.D.N.Y. 2002), aff'd, 2004 U.S. App. LEXIS 11334 (2d Cir. 2004), cert. denied, 125 S. Ct. 1640 (2005).

The critical showing that a party invoking Rule 56(f) must make is that the discovery sought is likely to change the outcome of the motion for summary judgment. See Banque Nat. de Paris S.A. v. Insurance Co. of North America, 896 F. Supp. 163, 165-166 (S.D.N.Y. 1995). Here, it is impossible for Bancorp to make the requisite showing. The source code for MetLife's administration system definitively establishes that it does not calculate the difference between book and market value. Bancorp has not pointed to anything in the produced source code that indicates otherwise, and, therefore, this fact is undisputed. No amount of further discovery is going to change that fact. See Belgard Declaration ¶¶ 17 – 18.

This very point was made by the Federal Circuit in Moore U.S.A., Inc. v. Standard Register Co., 229 F.3d 1091 (Fed. Cir. 2000), cert. denied, 532 U.S. 1008 (2001). In reviewing a district court's grant of a summary judgment of patent non-infringement, the Federal Circuit held

that the absence of significant discovery was not a bar to summary judgment when the party opposing the motion failed to indicate how additional discovery would enable the plaintiff to create a genuine issue of material fact:

> [Plaintiff] emphasizes that the parties had not taken a single deposition, [defendant] had not provided [plaintiff] with a single copy of any document, and over four months of discovery remained at the time of the district court's final grant of summary judgment. [Plaintiff] also contends that [defendant] had not fully responded to [plaintiff's] interrogatories.
>
> \* \* \*
>
> We have reviewed [plaintiff's] declarations under Rule 56(f) and conclude that the district court correctly refused to allow [plaintiff] to conduct "'fishing expeditions' in hopes of finding products that might be infringing" to oppose summary judgment. [Citation omitted.] Contrary to [plaintiff's] contentions, its Rule 56(f) declarations did not indicate how additional discovery would enable [plaintiff] to create a genuine issue of material fact regarding [defendant's] non-infringement of the three patents. [Plaintiff] does not contest [defendant's] claim that [plaintiff's] counsel had been allowed to inspect all the accused [defendant] forms at [defendant's] headquarters and that the accused [defendant] forms were publicly available. Consequently, we cannot agree that the district court abused its discretion in refusing to allow additional discovery.

229 F.3d at 1115-1116.

The same point was made by the Federal Circuit again in Hoffer v. Microsoft Corp., 405 F.3d 1326, 1331-32 (Fed. Cir. 2005). In that case, Bancorp's counsel, there representing IBM, successfully argued that Rule 56(f) was not an impediment to summary judgment of non-infringement by a computerized system. See also Spectra Corp. v. Lutz, 839 F.2d 1579, 1581 (Fed. Cir. 1988) ("The assertion that testing additional samples might possibly uncover polymer in the Coates toner does not establish that the district court abused its discretion. 'Summary judgment need not be denied merely to satisfy a litigant's speculative hope of finding some

evidence [through discovery] that might tend to support a complaint.'") (quoting <u>Pure Gold, Inc. v. Syntex (U.S.A.), Inc.</u>, 739 F.2d 624, 627 (Fed. Cir. 1984)).

> C. **In Light Of Its Rule 11 Obligations, Bancorp Cannot Resist Summary Judgment By Insisting On Additional Discovery In This Patent Case**

In light of its Rule 11 obligations, Bancorp cannot defeat MetLife's motion for summary judgment by insisting that it needs to conduct discovery in order to determine whether or not MetLife computes the difference between book and market value. Federal Circuit precedent makes it abundantly clear that that is not a viable response to MetLife's motion.

The Federal Circuit has held that, in order to comply with Fed. R. Civ. P. 11, counsel for a patentee must conduct an infringement analysis *before* filing suit:

> Rule 11, we think, must be interpreted to require the law firm to, at a bare minimum, apply the claims of each and every patent that is being brought into the lawsuit to an accused device and conclude that there is a reasonable basis for a finding of infringement of at least one claim of each patent so asserted. The presence of an infringement analysis plays the key role in determining the reasonableness of the pre-filing inquiry made in a patent infringement case under Rule 11.

<u>View Engineering, Inc. v. Robotic Vision Systems, Inc.</u>, 208 F.3d 981, 986 (Fed. Cir. 2000). "In bringing a claim of infringement, the patent holder, if challenged, must be prepared to demonstrate to both the court and the alleged infringer exactly why it believed before filing the claim that it had a reasonable chance of proving infringement. . . . ." <u>Id</u>. This pre-filing infringement analysis consists of two components: an independent interpretation of the claims and a comparison of the accused system with the construed patent claims. <u>Antonious v. Spalding & Evenflo Cos., Inc.</u>, 275 F.3d 1066, 1072-74 (Fed. Cir. 2002).

Here, the Federal Circuit had already provided the construction for the relevant claim limitation at the time Bancorp filed suit. See <u>Bancorp Services, L.L.C. v. Hartford Life Ins. Co.</u>,

359 F.3d 1367 (Fed. Cir. 2004).  Rule 11, as interpreted by the Federal Circuit, required that Bancorp's counsel have "some actual evidence uncovered during the prefiling investigation, that each claim limitation reads on the accused device either literally or under the doctrine of equivalents." Antonius, 275 F.3d at 1074.

Hence, Bancorp at a minimum was obligated to come forward in its opposition to MetLife's motion with the evidence of infringement it uncovered during its counsel's mandatory pre-filing investigation.  It did nothing of the sort.  Bancorp may not now, consistent with its Rule 11 obligations, simply appeal to the Court to defer its response to MetLife's motion because it hopes further discovery "will turn up something."

### D. Bancorp's Complaints About MetLife's Discovery Responses Are Ill-Founded And Irrelevant

MetLife to date has produced a total of more than 206,000 pages of documents to Bancorp, despite the fact that there is not yet even a scheduling order in place.  More than 176,000 of these pages were produced since the parties' meet and confer in November 2004.  In addition, after the meet and confer, MetLife amended and updated its initial disclosures and answers to interrogatories.  In contrast, Bancorp produced only 857 pages of documents since the meet and confer (nearly half of which related to Hartford Life Insurance and, therefore, appear to be irrelevant) and has not furnished any supplemental answers to interrogatories, although it had agreed to do so.  Zammit Declaration ¶¶ 2 -3.

Moreover, MetLife continues to produce documents (largely email of numerous present and former MetLife employees) on a rolling basis.  Because of the breadth of Bancorp's document requests (which encompass the email and other documents of numerous current and former MetLife employees), MetLife has been expending thousands of hours of paralegal and

attorney time collecting, reviewing and producing documents. This has been an extraordinarily time-consuming and expensive process, and it has been done diligently and in good faith. Zammit Declaration ¶ 5.

The fact that this process has not been completed yet is not a reason to deny or postpone MetLife's motion for summary judgment. On the contrary, forestalling the burden and expense of unnecessary discovery is a good reason to grant summary judgment where, as here, further discovery cannot make a difference in the outcome.

Bancorp has received in discovery all of the documentary evidence relevant to resolving MetLife's motion for summary judgment. MetLife has produced all of the relevant manuals for its administrative system, as well as the technical specifications relating to the modifications MetLife made to the standard Vantage One software to enable it to administer stable value COLI/BOLI. Most importantly, MetLife has produced the actual source code of the system itself.[5] Zammit Declaration ¶ 4.

Bancorp complains that the source code was not produced until after MetLife made its motion for summary judgment. However, Bancorp did not assert a need for source code until after the motion was filed. While the manuals and Technical Specifications should have been sufficient, MetLife worked expeditiously to get the source code to Bancorp. Because MetLife's

---

[5] In an amazing example of speaking from both sides of its mouth, Bancorp criticizes MetLife for responding to two of its interrogatories regarding how MetLife's administration system works by referring Bancorp to specified documents, rather than by providing a narrative response. (Bancorp's Memorandum In Support of Rule 56(f) Motion at 10.) Of course, Fed. R. Civ. P. 33(d) expressly permits the option of producing business records in lieu of answering an interrogatory. Moreover, it has been held that failure to answer an interrogatory will not bar summary judgment unless the party opposing the motion demonstrates how getting an answer would establish his defense. See Allen v. Bridgestone/Firestone, Inc., 81 F.3d 793, 798 (8th Cir. 1996). But the notable point here is that Bancorp levels this criticism at the same time that it complains that it cannot respond to MetLife's summary judgment motion because it has not yet received every last scrap of paper from MetLife. In short, Bancorp chides MetLife both for giving too much and not enough. In any event, Bancorp has now gotten the narrative it sought, insofar as it relates to MetLife's summary judgment motion, in the declarations of Sebastian Janssen and Shelley Lang.

administration system is a modified version of a software system licensed from a third party, Computer Sciences Corporation ("CSC"), MetLife was obligated to provide notice to CSC before producing the source code. CSC initially objected to MetLife's production of its proprietary software, but in the end made no application to this Court for a protective order. MetLife produced the source code on June 6, 2005.[6] Zammit Declaration ¶¶ 4 – 5, 17.

MetLife repeatedly offered to extend Bancorp's time to respond to the motion for summary judgment so that Bancorp would have ample opportunity to review the source code. Instead, Bancorp demanded extensive other discovery before being required to answer the motion. Effectively, Bancorp asked to put off its response until discovery was completed. MetLife saw this for the delaying tactic it was and declined. It nevertheless continued to offer Bancorp an extension in order to review the source code, but Bancorp refused. Zammit Declaration ¶¶ 12, 14, 16, 18-20, 23-25.

Having refused an extension in order to further analyze the source code, Bancorp cannot now assert that it has not had an adequate opportunity to study the code. And, indeed, Bancorp does not make that argument. Rather, it asserts the need for "other" discovery:

> MetLife may argue that it provided Bancorp an opportunity to review the source code by offering Bancorp an "extension" to respond to its summary judgment motion. This offer, however, fails to address the underlying issue as to whether Bancorp has obtained all necessary discovery to oppose MetLife's motion discussed above.

---

[6] MetLife produced the source code in the form it is maintained in the ordinary course of business, *i.e.*, as source listings for a mainframe computer. After waiting a week, Bancorp advised MetLife that it did not have the facilities to view the software in that form, and asked that the software be converted to a form readable on a personal computer. Although MetLife had no obligation to produce the software other than in the form maintained in the ordinary course of business (Fed. R. Civ. P. 34(b)), MetLife promptly provided a version of the source code readable on a personal computer.

Bancorp's Memorandum In Support of Rule 56(f) Motion at 11-12.  But the "other" discovery Bancorp seeks cannot make the system do something which it is incapable of doing.  Bancorp's position is analogous to insisting on further discovery in the vain hope of gaining an admission that a bed is a car, when a simple examination of the bed will definitively establish that it is not a car.[7]  See Belgard Declaration ¶¶ 12-18.

## CONCLUSION

For the reasons stated above, Bancorp's motion for additional discovery pursuant to Rule 56(f) should be denied in all respects.

---

[7] Bancorp's assertion that it "may very well need to depose percipient or 30(b)(6) witnesses or review documents yet to be produced regarding the source code to fully understand it" (Bancorp's Memorandum at 12) comes with particular ill-grace, since it refused an extension of time to study the source code to determine if it actually had any such questions.  Given that refusal, Bancorp cannot defeat a motion for summary judgment by such groundless conjecture.

Dated: July 11, 2005                                                RESPECTFULLY SUBMITTED,


  /s/ John H. Quinn, III
John H. Quinn, III, #4110
Edwin L. Noel, #19571
Andrew B. Mayfield, #3779
ARMSTRONG TEASDALE LLP
One Metropolitan Square, Suite 2600
St. Louis, Missouri 63102-2740
(314) 621-5070
(314) 621-5065 (facsimile)


– and –

Joseph P. Zammit (JZ3422)
Edward P. Dolido (ED4084)
Felice B. Galant (FG5484)
FULBRIGHT & JAWORSKI L.L.P.
666 Fifth Avenue
New York, New York 10103
(212) 318-3000
(212) 318-3400 (facsimile)

Attorneys for Plaintiff
Metropolitan Life Insurance Company