UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No. 4:00-CV-1927 (CEJ) |
| BANCORP SERVICES, L.L.C., | ) ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of plaintiff Metropolitan Life Insurance Company (MetLife) for summary judgment. Defendant Bancorp Services, LLC, (Bancorp) opposes the motion and the issues are fully briefed.

## I.  Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, deposi-tions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underly-ing facts.  AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987).  The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law.  Anderson v. Liberty Lobby, Inc., 477

U.S. 242 (1986); <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986); Fed. R. Civ. P. 56(c).  Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists.  Fed. R. Civ. P. 56(e).  Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex Corporation v. Catrett</u>, 477 U.S. 317, 322 (1986).

## II.  <u>Background</u>

Bancorp is the holder of U.S. Patent No. 5,926,792 (the '792 patent), entitled "System for Managing a Stable Value Protected Investment Plan."  The '792 patent describes a system for administering and tracking the value of separate-account life insurance policies issued pursuant to Corporate Owned Life Insurance ("COLI") and Bank Owned Life Insurance ("BOLI") plans.  <u>Bancorp Services, LLC v. Hartford Life Ins. Co.</u>, 359 F.3d 1367, 1369 (Fed. Cir. 2004).  Under these plans, the policy owner pays a higher premium than what is needed to fund a death benefit; the excess amount is available for investment in a variety of financial assets.  Banks and corporations purchase such policies on the lives of their employees to fund future post-retirement benefits on a tax-advantaged basis.  <u>Id</u>.

Accounting rules require BOLI and COLI plan owners to report the cash surrender value of any policies they own. That value fluctuates with the market value of the underlying securities; the volatility inherent in short-term market values has made some companies reluctant to purchase the plans. Stable value protected investments provide a mechanism for stabilizing the reported value of the policies by arranging for a third party guarantor – the "stable value protected writer" – to guarantee, for a fee, a particular value (the "book value") of the life insurance policy, regardless of its market value, in the event the policy must be paid out prematurely. Id. The '792 patent provides a system for tracking the market value and the book value and calculating the credits representing the amount the stable value protected writer must guarantee and pay out if the policy is surrendered. Id. The policy holder is required to report only the more stable book value. Id.

By letter dated December 21, 1999, Bancorp accused MetLife of acting in violation of the '792 patent. MetLife brought suit in the Southern District of New York, requesting, *inter alia*, a declaratory judgment of noninfringement and invalidity of the '792 patent. Because three other actions relating to the '792 patent were pending in this Court, the suit was transferred here, where it was assigned cause number 4:00-CV-1927 (CEJ).

On February 13, 2002, in a related action, styled <u>Bancorp Services, LLC v. Hartford Life Ins. Co.</u>, No. 4:00-CV-70 (CEJ), this Court held the '792 patent invalid for indefiniteness. The Court

dismissed MetLife's declaratory judgment claim in this action for lack of subject-matter jurisdiction and stayed the remaining claims pending disposition by the Federal Circuit of Bancorp's appeal of the invalidity determination. On March 1, 2004, the Federal Circuit held that the '792 patent was not invalid for indefiniteness. <u>Bancorp Services, LLC v. Hartford Life Ins. Co.</u>, 359 F.3d 1367 (Fed. Cir. 2004). MetLife moved to reinstate its claims against Bancorp and Bancorp filed a separate action (assigned cause number 4:04-CV-869 (CEJ)), asserting a claim that MetLife infringes the '792 patent. On February 9, 2005, the Court reinstated MetLife's claims and consolidated the two actions. At the Court's direction, Bancorp's complaint in cause number 4:04-CV-869 (CEJ) was refiled as a counterclaim in cause number 4:00-CV-1927 (CEJ).

## III. **Discussion**

MetLife has filed a motion for summary judgment on the parties' patent claims. Every independent claim of the '792 patent requires the calculation of "surrender value protected investment credits." MetLife contends that the evidence establishes that it does not perform that calculation, as that term is interpreted by the Federal Circuit. Thus, MetLife contends, it cannot be held to infringe the '792 patent.

In <u>Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.</u>, No. 4:00-CV-70 (CEJ), this Court found the meaning of the term "surrender value protected investment credits" so unclear as to render the

patent claims invalid.  The Federal Circuit disagreed, stating as follows:

> First, the term "surrender value" has a clear meaning to one of ordinary skill in the relevant art.  Namely, as the district court noted, "surrender value" is generally interpreted to mean the value of all of the components of a life insurance policy minus any surrender charges and/or outstanding debt.  Second, the specification of the '792 patent and the extrinsic evidence make it clear that the term "protected investment" refers to the underlying investment components of an insurance policy or policies whose return is stabilized over time in return for a fee.  Finally, the specification makes clear the meaning of the word "credits." The specification explains that the invention "calculates credits due to the targeted return and a present daily investment value." A "credit," therefore, is the difference between the actual value of an investment and the smoothed out or targeted return value of that investment. <u>Viewing these components of the claim term together, it is reasonably clear that "surrender value protected investment credits" means the difference between the actual value of a protected investment and the targeted return value of that investment at the time the protected life insurance policy is surrendered.</u>

<u>Bancorp Services, L.L.C. v. Hartford Life Ins. Co.</u>, 359 F.3d 1367, 1372 (Fed. Cir. 2004) (emphasis added and citations omitted).[1]

Based upon this statement from the Federal Circuit, MetLife asserts that in order to infringe the '792 patent, the accused system or method must calculate the difference between the "book value" and the "market value," (also referred to as the "wrap asset" or "wrap security").  MetLife submits the declarations of employees Shelley Lang and Sebastian Janssen to support its contention that it does not perform this calculation.

---

[1]Bancorp disputes that the Federal Circuit's statement amounts to a construction of the term "surrender value protected investment credit."  Rather, Bancorp asserts, the appropriate construction of the term is "the increase in value – i.e., the credit – to the stable value investment on a daily basis."

MetLife uses a software program known as "Vantage One" (or "the Vantage system") to administer its stable value policies. In response to MetLife's motion for summary judgment, Bancorp filed both a response in opposition and a motion for discovery under Rule 56(f), Fed.R.Civ.P. One basis for Bancorp's Rule 56(f) motion was its complaint that MetLife did not produce the source code for the Vantage system until after it filed its summary judgment motion. MetLife repeatedly offered to consent to an extension of time for Bancorp to respond to the summary judgment motion so that Bancorp could conduct an independent analysis. Bancorp never requested an extension from the Court. On January 15, 2006, the Court denied Bancorp's Rule 56(f) motion, stating that Bancorp's failure to seek an extension for the purposes of analyzing the Vantage source code precluded its complaint that it needed additional time. Nonetheless, the Court said, "it would be useful to know the outcome of any analysis Bancorp may have completed of the Vantage system." The Court thus granted Bancorp fifteen days to file with the Court the results of its independent analysis of the Vantage system.

Bancorp timely filed a response to the Court's order and, with leave of Court, MetLife has filed a response to Bancorp's response. The Court notes that Bancorp did not perform an analysis of the Vantage system until after January 15, 2006, when the Court denied its Rule 56(f) motion.

Bancorp submits the declaration of David Klausner. Mr. Klausner has experience as an engineer and software developer; he

is also experienced in forensic investigation, including reverse engineering, of computer programs. Mr. Klausner evaluated large sections of the Vantage source code, looking for portions that calculate the difference between the book value, also referred to as stable value, and the market value.

Mr. Klausner identifies three modules of code -- IUAENA1, IUAEMO1, and F6500DAP -- that he believes instruct the system to calculate the difference between book value and market value. He identifies three additional modules that he believes transfer data to Excel spreadsheets maintained outside the Vantage system; he opines that the critical calculation is performed in the spreadsheets.

Shelley Lang refutes each of Mr. Klausner's conclusions. For example, module IUAENA1 instructs the program to distribute a client's premium payment among the different funds in which it is invested; Module IUAEM01 computes the total amount at risk for each individual insured, a factor MetLife uses in calculating the cost of insurance. Module F6500DAP calculates the ratio of market value over book value, which Mr. Klausner asserts may then be used to calculate the difference between book value and market value. Ms. Lang challenges the assertion as incorrect as a matter of simple arithmetic. However, examination of the formula Mr. Klausner

provides indicates that he is correct.[2]  Ms. Lang does not offer an alternative explanation for the function of this module.

MetLife contends that Mr. Klausner's conclusions are inadmissible because his methodology is inadequate under <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993).  The admission of expert testimony is governed by Rule 702, Fed.R.Evid., which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In <u>Daubert</u>, the Supreme Court outlined the Rule 702 standard for admission of scientific evidence.  <u>See also</u> <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 141 (1999) (<u>Daubert</u>'s general holding regarding the trial court's gatekeeping function applies to expert testimony based on technical and other specialized knowledge, in addition to expert scientific testimony).  The objective of <u>Daubert</u>'s gatekeeping requirement "is to ensure the reliability and relevancy of expert testimony."  <u>Id.</u> at 152.  The focus of the

---

[2]The formula is as follows: BV – MV = BV*(1 – MV/BV), where MV is market value and BV is book value.  Mr. Klausner provides the following example:  If market value is $80 million and book value is $100 million, the ratio of market value over book value is 0.80.  The remainder ratio is 0.20 which, when multiplied with the market value of $100 million, provides $20 million, which is also the difference between book value and market value.  Ms. Lang notes that a ratio is not the same as a difference; <i>e.g.</i>, the ratio of 3 to 9 is .3333, whereas 9 minus 3 is 6.  Ms. Lang fails to address the fact that the difference can be reached by applying the remainder ratio which is easily derived from the ratio of market value over book value.

inquiry under Rule 702 and <u>Daubert</u> is "solely on principles and methodology, not on the conclusions that they generate." <u>Daubert</u>, 509 U.S. at 595. <u>See Bonner v. ISP Technologies, Inc.</u>, 259 F.3d 924, 929 (8th Cir. 2001) (it is expert witnesses' methodology, not their conclusions, that is the primary concern of Rule 702). The factual basis of an expert's opinion goes to the credibility of the testimony, not the admissibility. <u>Marvin Lumber and Cedar Co. v. PPG Indus., Inc.</u>, 401 F.3d 901, 916 (8th Cir. 2005). "Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." <u>Bonner</u>, 259 F.3d at 929-30.

MetLife challenges Mr. Klausner's methodology, contending that his conclusions are based upon "mere speculation." MetLife does not suggest that the kind of code analysis Mr. Klausner undertook is incorrect, merely that he was incomplete. The Court believes that MetLife's complaints ultimately go more to the credibility of Mr. Klausner's conclusions, rather than to their admissibility. The Court finds, thus, that Mr. Klausner's report is admissible for the purposes of ruling on MetLife's summary judgment motion. The Court further finds that the report creates genuine disputes of material fact regarding whether MetLife calculates the difference between market value and book value and thus calculates "surrender value protected investment credits," as MetLife construes that term.

Accordingly,

**IT IS HEREBY ORDERED** that MetLife's motion for summary judgment [#159] is **denied**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 13th day of March, 2006.